IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| SANOFI-AVENTIS DEUTSCHLAND GmbH, | § § § | |
| | § | Civil Action No. 9:09-CV-9 |
| *Plaintiff*, | § § | |
| | § | JUDGE RON CLARK |
| v. | § § | |
| NOVO NORDISK, INC. | § § | |
| | § | |
| *Defendant*. | § | |

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS, STAY, OR TRANSFER**

Plaintiff Sanofi-Aventis Deutschland GmbH ("Sanofi") filed suit against Defendant Novo Nordisk, Inc. ("Novo") claiming that Novo's disposable injection needle with an automatic safety lock infringes United States Patent No. 6,203,529. The '529 patent is directed toward a needle assembly for injection devices. Novo now moves to dismiss, stay, or transfer this case under the "first to file" rule in light of a prior, parallel declaratory judgment action brought by Novo in the Southern District of New York also involving the '529 patent.

Analysis of the Section 1404(a) "convenience" factors, as required by the Federal Circuit in *Micron Technology*, favors following the "first to file" rule and transferring this case to the Southern District. However, because issues regarding personal jurisdiction over Sanofi and the timing of Novo's suit under the parties' licensing agreement remain in the Southern District action, the court will stay, rather than dismiss, Sanofi's patent infringement suit until the New York court resolves these issues. If the Southern District finds no barrier to Novo's suit, the court will transfer the case at that time.

1

## I. Background

The following facts are undisputed, unless otherwise noted. Sanofi is a German corporation with all of its offices in Germany. It has no offices or operations in the United States.[1] Novo is a Delaware corporation with its principal place of business in New Jersey. Novo has no offices in New York. Novo's parent company, Novo Nordisk A/S, is a Danish corporation with its headquarters in Denmark.

The '529 patent covers a disposable injection needle arrangement with an automatic safety lock. The two inventors on the '529 patent both reside in Germany, and the inventive activities all occurred in Germany. The '529 patent was originally filed by BD Medico, which is a joint venture between companies based in Germany and New Jersey, and prosecuted by an attorney who resides in Connecticut. The accused device, Novo's NovoFine Needle, was designed, developed, and manufactured in Denmark. Novo's parent company imports the device into the United States and sells it nation-wide.

Sanofi and Novo Nordisk A/S entered into a license and settlement agreement in February 2001. *See* Pl. Resp., Ex. F [Doc. # 15]. Because the agreement has a confidentiality clause and was filed under seal in this action, the court will not discuss its provisions in any detail here, other than to note that in the event of a patent infringement dispute between the parties covering certain subject matter, the parties agreed not to take legal action against each

---

[1]Sanofi is a subsidiary of sanofi-aventis of Paris, France ("Sanofi-France") which also has its offices in Germany. In the United States, Plaintiff Sanofi sells its products almost exclusively to two New Jersey-based subsidiaries of Sanofi-France, namely sanofi-aventis U.S. LLC and Sanofi-Aventis U.S. Inc.

other for a specified period of time. As discussed below, it is appropriate for the Southern

District to deal with any issues raised by the timing of Novo's suit in New York.

Novo filed suit in the United States District Court for the Southern District of New York

on January 6, 2009, seeking a declaratory judgment that the NovoFine Needle does not infringe

any valid claim on the '529 patent. Case No. 1:09-cv-47 (S.D.N.Y. 2009). Sanofi filed the

instant case on January 9, 2009, claiming infringement of at least claim 1 of the '529 patent

[Doc. # 1]. Sanofi was served in the Southern District action pursuant to the Hague Convention

on February 23, 2009. Case No. 1:09-cv-47, Doc. # 6.

Novo now moves to dismiss, stay, or transfer Sanofi's later-filed infringement action

under the "first to file" rule.

## II. Applicable Law

A.      "First to File" Rule

As a general rule, a first-filed declaratory judgment suit will be entitled to precedence

over a later-filed patent infringement action. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931,

937 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277,

115 S. Ct. 2137 (1995) (the "first to file" rule "favors the forum of the first-filed action, whether

or not it is a declaratory judgment action.").[2]  In determining whether to apply the "first to file"

rule, the court will determine: (1) whether the actions are so duplicative, or involve such

substantially similar issues, that one court should decide both actions; and (2) which court should

---

[2]Federal Circuit, rather than Fifth or Second Circuit, law governs the application of the "first to file" rule where the overlapping suits arise under federal patent law. *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005).

hear the case. *Third Dimension Semiconductor, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2008

WL 4179234 at *1 (E.D. Tex. Sept. 4, 2008).

The principle behind the "first to file" rule is to "avoid duplicitous litigation. . .[,] rulings

which may trench upon the authority of sister courts, and . . piecemeal resolution of issues that

call for a uniform result." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721,

729 (5th Cir. 1985). While this rule is not inflexible, the trial court should exercise its discretion

not to follow it only where there is:

> sound reason that would make it unjust or inefficient to continue the first-filed action.
> Such reason may be the convenience and availability of witnesses, or absence of
> jurisdiction over all necessary or desirable parties, or the possibility of consolidation with
> related litigation, or considerations relating to the real party in interest.

*Genentech,* 998 F.2d at 938; *see also Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347

(Fed. Cir. 2005) ("We apply the general rule favoring the forum of the first-filed case unless

considerations of judicial and litigant economy, and the just and effective dispositions of

disputes, requires otherwise. Exceptions are not rare, but we have explained that there must be

sound reason that would make it unjust or inefficient to continue the first-filed action.").

However, more recent case law suggests that the Federal Circuit now rejects any

categorical rule that the first-filed court is always the appropriate court to determine which case

should proceed in the context of patent infringement suits. *See Micron Technology, Inc. v.

MOSAID Technologies, Inc.*, 518 F.3d 897 (Fed. Cir. 2008). In *Micron Technology*, the first-

filed suit was brought by Micron as a declaratory judgment in the Northern District of California.

MOSAID filed its patent infringement suit the following day in the Eastern District of Texas.

There was some overlap between the patents asserted in the two cases, although six of the patents

at issue in the Northern District were not challenged in the Eastern District case. *Id.* at 900.

MOSAID filed a motion to dismiss or transfer on subject matter jurisdiction grounds in the

Northen District. The motion to dismiss was granted. *Id.* The Federal Circuit reversed:

> In light of the new more lenient standard for declaratory judgment jurisdiction, competing patent lawsuits may be filed within relatively short time frames. District courts, typically the ones where declaratory judgment actions are filed, as occurred in the present controversy, will have to decide whether to keep the case or decline to hear it in favor of the other forum, most likely where the infringement action is filed. Instead of relying solely on considerations such as tenuousness of jurisdiction, broadness of the case, and degree of vestment, as in this case, or automatically going with the first filed action, the more appropriate analysis takes account of the convenience factors under 28 U.S.C. § 1404(a). . .In other words, this court notes that when the discretionary determination is presented after the filing of an infringement action, the jurisdiction question is basically the same as a transfer action under § 1404(a).

*Id.* at 903-04.[3]

B.      Section 1404(a)

Section 1404(a) provides that a district court may transfer a civil action to any district in

which it might have been brought "[f]or the convenience of parties and witnesses" and "in the

_____

[3] A parallel analysis under Fifth Circuit law has the potential to yield a different result, as the initial inquiry in the Fifth Circuit is whether the cases have "substantial overlap." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). In other words, the court should consider whether the two co-pending actions are "so duplicative or. . . involve such substantially similar issues that one court should decide the subject matter of both actions." *Datamize, Inc. v. Fidelity Brokerage Servs.*, LLC, 2004 WL 1683171 at *3 (E.D. Tex. Apr. 22, 2004). "Once the likelihood of a substantial overlap between the two suits has been demonstrated, it is. . .no longer up to the second filed court to resolve the question of whether both should be allowed to proceed." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605 (5th Cir. 1999) (internal brackets and quotation omitted). The proper course of action is then for the second-filed court "to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Id.* at 606; *see also Save Power Ltd.*, 121 F.3d at 950 ("The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed."); *Huntsman Corp. v. International Risk Ins. Co.*, 2008 WL 1836384 at *5 (E.D. Tex. Apr. 22, 2008); *Data Management, Inc. v. Control Module, Inc.*, 2009 WL 424158 at *2 (N.D. Tex. Feb. 18, 2009).

interests of justice."  The goal of Section 1404(a) "is to prevent waste of time, energy, and money

and to protect litigants, witnesses, and the public against unnecessary inconvenience and

expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964).  The threshold

determination to be made under Section 1404(a) is whether the claim could have been filed in the

judicial district to which transfer is sought. *In re Horseshoe Entertainment*, 337 F.3d 429, 433

(5th Cir. 2003), *cert. denied*, 540 U.S. 1049, 124 S. Ct. 826 (2003).

If so, the court's analysis turns to the convenience of the parties and the witnesses.  *In re*

*Volkswagen of American, Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) ("[W]hen the transferee venue

is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should

be respected.  When the movant demonstrates that the transferee venue is *clearly* more

convenient, however, it has shown good cause and the district court should therefore grant the

transfer.") (emphasis added); *see also In re TS Tech USA Corp*., 551 F.3d 1315, 1319 (Fed. Cir.

2008) (applying *In re Volkswagen*).  This determination involves examining several private and

public interest factors, none of which are given dispositive weight individually.  *In re*

*Volkswagen,* 545 F.3d at 315.  The movant bears the burden of proof in demonstrating that a

transfer is warranted. *See Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).

The private interest factors include: "(1) the relative ease of access to sources of proof;

(2) the availability of compulsory process to secure the attendance of the witnesses; (3) the cost

of attendance for willing witnesses; and (4) all other practical problems that make trial of a case

easy, expeditious, and inexpensive." *In re Volkswagen,* 545 F.3d at 315.  The public interest

factors consist of (1) the administrative difficulties caused by court congestion; (2) the local

interest in adjudicating local disputes; (3) the familiarity of the forum with the law that will

govern the case; and (4) the avoidance of unnecessary problems in conflict of laws. *Id*.

The Plaintiff's choice of forum is not an independent factor in a Section 1404(a) analysis.

*In re Volkswagen*, 545 F.3d at 314, n.10. Rather, the Plaintiff's choice of forum is taken into

account because it "places a *significant burden on the movant* to show good cause for the

transfer." *Id.* (emphasis added).

The Fifth Circuit has also set out what it terms the "100 mile" rule, which requires that

"[w]hen the distance between an existing venue for trial of a matter and a proposed venue under

§ 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct

relationship to the additional distance to be traveled." *In re TS Tech*, 551 F.3d at 1320 (quoting

*In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004)); *see also In re Volkswagen*, 545 F.3d at

317.

### III. Discussion

Novo argues strenuously that Sanofi reads *Micron Technology* too broadly, and that the

case does not stand for the proposition that the second-filed patent infringement suit court should

consider whether it was the appropriate venue for both cases to be heard; rather, it holds only

that, under the facts of that case, the first-filed declaratory judgment suit court should have

utilized a Section 1404(a)-like analysis to determine whether it could decline to hear the case.

There is some authority for Novo's position.[4]

---

[4]*See, e.g., Micron Technology*, 518 F.3d at 904 ("District courts, *typically the ones where declaratory judgment actions are filed*. . . will have to decide whether to keep the case or decline to hear it in favor of the other forum, most likely where the infringement action is filed.") (emphasis added); *StemCells, Inc. v. Neuralstem, Inc.*, 2008 WL 2622831 (N.D. Cal. Jul. 1, 2008) (citing *Micron Technology*, the court pointed out that consideration of Section 1404(a)

However, as already stated, when analyzing the question of whether to apply the "first to

file" rule, the court should determine (1) whether the actions are so duplicative, or involve such

substantially similar issues, that one court should decide both actions; and (2) which court should

hear the case.  *Third Dimension Semiconductor,* 2008 WL 4179234 at *1.  The holding of

*Micron Technology*, insofar as it is applicable to the facts of this case, bears on the second factor.

Because the Federal Circuit previously stated that the "first to file" rule should not be applied if

considerations of judicial and litigation economy dictate otherwise, *see Electronics for Imaging*,

394 F.3d at 1347, the analysis does not change much if the Section 1404(a) standard is used.[5]

_____

factors has always been part of the "first to file" analysis and stated that the court in the first-filed
action should determine whether there is an exception to the "first to file" rule); *Berry Floor
USA, Inc. v. Faus Group, Inc*., 2008 WL 4610313 at *2 (E.D. Wis. Oct. 15, 2008) ("In *Micron*,
the court lays out the analysis district courts should engage in *when determining whether or not
to retain jurisdiction over a declaratory judgment action*, or to transfer that action to the court in
which the infringement suit was brought.") (emphasis added); *but see* First-to-File and Choice-
of-Forum Roots Run Too Deep for Micron to Curb Most Races to the Courthouse, 90 J. PAT. &
T'MK. OFF. SOC'Y 547, 570-71 (2008) ("*Micron* generally reinforces the notion that a district
court will commit an abuse of discretion if, in deciding a motion for discretionary disposition of
a co-pending infringement or declaratory judgment action, it disregards evidence of record
presented by either litigant bearing upon the § 1404(a) 'convenience factors.'").

[5]Novo argues that Sanofi actually has the burden to prove that an exception to the "first to
file" rule applies, because Novo filed first and Sanofi opposes application of the rule.  In support
of this, Novo cites no Federal or Fifth Circuit authority, choosing instead to favor the court with
one case from the Eleventh Circuit and one from the Northen District of Georgia, both of which
pre-date *Micron Technology*.  Although Novo argues that it should not be required to prove that
any exception to the rule it wants applied is not warranted, the Federal Circuit in *Micron
Technology* stated that "the trial court must weigh the factors used in a transfer analysis *as for
any other transfer motion*."  *Micron Technology*, 518 F.3d at 904 (emphasis added).  Novo wants
this case dismissed, stayed, or transferred to the Southern District of New York, and it still bears
the ultimate burden to demonstrate that its motion should be granted.

8

A.      Whether the Actions are so Duplicative, or Involve Such Substantially Similar Issues, that One Court Should Decide Both Actions

Neither side disputes that the issues in this case – namely whether Sanofi's '529 patent is infringed by the NovoFine Needle and the validity of the '529 patent – are the same in the declaratory judgment action filed by Novo in the Southern District and the patent infringement suit subsequently filed by Sanofi in the Eastern District. Because these suits are identical, one court should decide both actions.

B.      Section 1404(a) Analysis

1.      *Private interest factors*

a.      **The relative ease of access to sources of proof**

According to the parties' motion papers, there are no documents or individuals present in New York at all, much less in the Southern District. Novo does point to some documents and witnesses which are likely to be found in New Jersey (where Novo has offices) and Connecticut (where the prosecuting attorney resides). Sanofi is a German company, and the patent was also developed in Germany. The inventors reside there to this day, and any inventive documents would presumably be found there as well. New Jersey, Connecticut, and Germany are all closer to the Southern District of New York than the Eastern District of Texas.

Novo also suggests that it is significant that of the twenty-eight authors of the prior art cited in the '529 patent, twenty-two are located in Europe, Israel, Pennsylvania, or New Jersey. All of these locales are closer to New York than Texas. At the same time, Novo fails to point out that of the remaining six, five reside in California and one resides in the Southern District of Texas. Pl. Resp., Ex. R [Doc. # 15].

Novo does not explain why the location of the authors of the prior art cited in the patent would be relevant at all. It is highly unlikely that any of these authors would be called to testify at deposition or trial, or that any of their personal records relating to the references would contain relevant information. However, assuming these authors' documents could be considered relevant, these individuals are located in four different U.S. states (Texas, California, New Jersey, and Pennsylvania) and a number of different countries. Most, although by no means all, are located closer to New York than Texas.

To summarize, there are no documents or individuals identified which are located in either the Southern or Eastern Districts. At the same time, most of these documents and potential witnesses are likely to be found in locales which are closer to the Southern District (where corporate documents, prior art authors, the prosecuting attorney, and the inventors are found in Pennsylvania, New Jersey, Germany, and possibly Denmark) than the Eastern District (where only six prior art authors live in California or Texas). This factor weighs in favor of transfer.

b. **The availability of compulsory process to secure the attendance of the witnesses**

Because neither side has identified any witnesses located in either the Southern District of New York or the Eastern District of Texas, this factor is neutral.

c. **The cost of attendance for willing witnesses**

The Fifth Circuit's "100 mile" rule applies because the Southern District of New York is more than 100 miles away from Lufkin, Texas. *In re Volkswagen AG*, 371 F.3d at 205. In *TS Tech*, the Federal Circuit found that this factor weighed in favor of transfer to a Defendant's home district where all of the witnesses were located in or around that district. *In re TS Tech*,

551 F.3d at 1320. At the same time, this factor can be neutral if the transferee district is not convenient for all of the witnesses. *See, e.g., Network-1 Security Solutions, Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 800 (E.D. Tex. 2006) (denying Defendants' motion for transfer when the witnesses were in different geographic locations); *J2 Global Communications, Inc. v. Protus IP Solutions, Inc.*, 2009 WL 440525 at *4 (E.D. Tex. Feb. 20, 2009) (finding this favor neutral where none of the parties are localized in one general geographic area); *Invitrogen v. General Elec. Co.*, 2009 WL 331889 at *3 (E.D. Tex. Feb. 9, 2009) (finding that this factor was neutral where the transferee district would be more convenient for Defendants' witnesses but less convenient for Plaintiff's witnesses). The convenience of the parties and their witnesses is given less weight in a transfer analysis than the convenience of non-party witnesses. *Williams v. Toyota Motor Corp.*, 2008 WL 5158583 at *3 (E.D. Tex. Dec. 9, 2008).

While none of the potential witnesses in this case resides in either the Eastern or the Southern Districts, the majority are located closer to the Southern District than to the Eastern District. Any corporate witnesses from Sanofi and the inventors of the '529 patent are most likely to be found in Germany. Novo is headquartered in New Jersey, and its employees are presumably located there. If necessary, Novo's parent company – and any of its employees – can be found in Denmark. The prosecuting attorney lives in Connecticut, and twenty-two of the twenty-eight prior art authors cited in the '529 patent reside in locations nearer to New York than Texas (i.e., New Jersey, Pennsylvania, Europe, and Israel). These individuals are all closer to the Southern District than the Eastern District. Only the remaining six prior art authors, who reside in California and Texas, are closer to the Eastern District.

While the actual costs of appearing as a witness at trial in New York City, from the

parking rates to the prices of hotel rooms and meals, are far greater than they would be in Lufkin,

Texas, the costs of travel to New York City, which is much closer to many of these potential

witnesses' residences than Lufkin, is likely to be less.  This factor weighs in favor of transfer.

> d.  **All other practical problems that make trial of a case easy,
> expeditious, and inexpensive**

Sanofi cites two potential problems with litigating this case in New York, the first of

which is whether personal jurisdiction over Sanofi exists in the Southern District declaratory

judgment suit filed by Novo. While this court will not opine on the merits of a motion to dismiss

not before it[6], district courts have generally been reluctant to transfer venue in a case where the

issue of personal jurisdiction over the Plaintiff in the transferee venue is somewhat unclear.[7]  If

---

[6]Novo engages in a somewhat lengthy discussion of the New York long arm statute, N.Y.
C.P.L.R. § 301, to support the argument that a court can exercise general jurisdiction over a
foreign corporation based on the activities of a domestic company under common ownership
which conducts all of the business that the foreign corporation could do if it were present by its
own officials.  Since jurisdictional discovery is on-going in the New York case, this court doubts
if the issue is as straightforward as Novo claims it is.  In any event, Novo is directing its
argument toward the wrong court.  "While the likelihood of a jurisdictional dispute in the first-
filed court may be a factor to consider in applying the 'first to file' rule, resolving the dispute in
favor of that court's jurisdiction is never a condition precedent to applying it."  *Cadle Co. v.
Whataburger of Alice, Inc*., 174 F.3d 599, 605 (5th Cir. 1999).

[7]*See, e.g., Aerotel, Ltd. v. Sprint Corp*., 100 F. Supp. 2d 189, 198 (S.D.N.Y. 2000) (where
Plaintiff was an Israeli corporation who sued for patent infringement in the Southern District of
New York and one Defendant subsequently brought a declaratory judgment suit in the District of
Kansas then moved to transfer the New York case to Kansas, the district court denied the motion,
stating "If I were to transfer this case to Kansas only to find the Kansas court lacks jurisdiction
over [Plaintiff], [Plaintiff] would, in effect, have no remedy other than bringing another action in
this or some other forum. Surely such a result is not in the interests of justice."); *Tape & Techs.,
Inc. v. Davlyn Mfg. Co., Inc*., 2005 WL 1072169 at *4 (W.D. Tex. May 6, 2005) (where Plaintiff
was a Texas corporation, Defendant was a Pennsylvania corporation, Defendant filed a patent
infringement action in the Eastern District of Pennsylvania, and Plaintiff subsequently filed a
declaratory judgment action in the Western District of Texas, the district court denied

this case were transferred to New York, it is very possible that the Southern District could find

that jurisdiction does not exist in the declaratory judgment case. On the other hand, if Sanofi's

claims were litigated here, Novo may bring its declaratory judgment allegations as counterclaims.

There is no doubt that personal jurisdiction over Sanofi exists in this District.

Sanofi also argues at length that Novo did not have authority to bring suit under the

parties' licensing agreement at the time it did. Novo argues that the agreement's timing

provisions are inapplicable here, as the patent dispute in this case is outside the specified subject

area, and interpretation of the clause in question is for German, rather than United States, courts

to determine under the agreement's venue provision. This court will not rule on the merits of a

case or motion not before it. The New York court will evaluate Novo's arguments in deciding

whether to retain or dismiss the declaratory judgment case.

Sanofi points out that Novo's parent company, Novo Nordisk A/S has, in the past, seen

the Eastern District as a convenient forum to litigate as a Plaintiff. Novo Nordisk A/S filed a

patent infringement case against a number of Defendants here in 2008 where, as in this case,

venue against the Defendants was premised on the fact that the allegedly infringing products

were sold in the Eastern District. *See Novartis Vaccines & Diagnostics, Inc. v. Bayer*

*Healthcare, LLC*, Case No. 2:08-cv-68 (E.D. Tex. 2008). While the court agrees that a

Defendant cannot avail itself of the Eastern District's courts when it suits them, only to complain

less than one year later that the Eastern District is an inconvenient venue in a subsequent suit, the

Marshall case was filed by Novo's parent company rather than by Novo itself. Texas was also a

---

Defendant's motion to dismiss in the Western District because "[t]here remains a question of
whether the Eastern District of Pennsylvania may properly exercise personal jurisdiction over
Plaintiff.").

more centralized location for the parties in the *Novartis* case, as one Plaintiff had its principal place of business in California, while the other was Novo's Denmark-based parent company. The Defendants were also scattered, with principal places of business in New York, Pennsylvania, and Germany.

The uncertainty of personal jurisdiction over Sanofi in New York and the timing of Novo's filing of its declaratory judgment action under the parties' licensing contract both weigh against transferring this case to New York. However, Sanofi's concerns can be alleviated by staying the instant case until the Southern District resolves the somewhat thorny problems of personal jurisdiction and authority to bring suit under the licensing agreement. In the event the Southern District finds that Novo's suit can proceed, this court could then simply transfer the case to New York at that time. Conversely, if the New York court concludes Novo's suit should be dismissed, Sanofi's patent infringement case could resume in this court.[8]

---

[8] In a recent case where Sanofi was also a Plaintiff, the court denied a motion to transfer to a second-filed court in California, partly on the grounds that personal jurisdiction over Sanofi in the California court was uncertain. *See Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.*, 2009 WL 764303 (E.D. Tex. Mar. 19, 2009). In that case, Sanofi's patent infringement action in the Eastern District of Texas was the first-filed suit, while Defendants Genentech and Biogen Idec's declaratory judgment action in the Northern District of California was second-filed. The court pointed out that "if Sanofi's claims remain here, [Defendants] may bring their declaratory judgment allegations as counterclaims." *Id* at *7. Denying the motion for transfer thus avoided imposing the difficult task of resolving jurisdictional issues on the California court, while still providing Genentech and Biogen with a forum for their claims. Judicial economy was promoted by denying the motion to transfer in that case. In contrast, in this case considerations of judicial economy strongly favor allowing any jurisdictional question to be resolved by the first-filed court in New York.

2.      *Public interest factors*

a.      **The administrative difficulties caused by court congestion**

Judicial statistics for both the Southern and Eastern Districts reveal that the Eastern District has a faster median time-to-trial interval – 17 months – than the Southern District does – 29 months.  Pl. Resp., Ex. K.  Novo points out that the Eastern District had a higher weighted filings total for the twelve month period ending September 30, 2008 – 616 – when compared to the Southern District – 544, but the same statistical charts reinforce the point that cases reached trial more quickly in the Eastern District than in the Southern District during the same period.  Def. Reply, Exs. 4, 5.  This factor weighs somewhat against transfer.

b.      **The local interest in adjudicating local disputes**

None of the parties maintains a research or commercial presence in either the Eastern District of Texas or the Southern District of New York.  The residents of both Districts have an interest in the outcome of this case, as the allegedly infringing products are sold both in New York and Texas.  This factor is neutral.

c.      **The familiarity of the forum with the law that will govern the case**

The courts of the Southern District of New York are well known for handling a docket of complex civil and criminal cases, including patent litigation.  Sanofi's case would not be this court's first intellectual property rodeo.  This factor is neutral.

d.      **The avoidance of unnecessary problems in conflict of laws**

As federal patent law will apply to most of the issues in this case, there is no conflict of laws problem.  This factor is neutral.

C.      Which Court Should Hear the Case?

In keeping with the Federal Circuit's direction in *Micron Technology* to utilize a Section 1404(a) approach in order to determine whether the "first to file" rule should be followed, the court concludes that such an analysis favors transfer to the first-filed forum.  Private interest factors one and three weigh in favor of transfer, while factor four weighs against transfer.  Factor two is neutral.  Public interest factor one weighs somewhat against transfer, while factors two through four are neutral.

At the same time, the court is conscious of Sanofi's concerns regarding jurisdiction and the timing of Novo's declaratory judgment suit under the licensing agreement.  Therefore, rather than dismissing or transferring the case to the Southern District at this time, the court will stay Sanofi's patent infringement suit until the New York court resolves the jurisdictional and licensing agreement issues.  If the Southern District finds no barrier to Novo's suit, the court will transfer the case at that time.  In the event Novo's declaratory judgment action is ultimately dismissed for either lack of personal jurisdiction or failure to abide by the licensing agreement, Sanofi's suit in the Eastern District can proceed.

IT IS THEREFORE ORDERED that Defendant Novo Nordisk, Inc.'s Motion to Dismiss, Stay, or Transfer Venue [Doc. # 8] is GRANTED IN PART.  This case will be STAYED pending resolution of the jurisdictional and licensing agreement issues by the Southern District of New York.

So **ORDERED** and **SIGNED** this **3**  day of **April, 2009.**

_____

Ron Clark, United States District Judge